**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| CRAYOLA PROPERTIES, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>                    Defendants. | Case No. 20-cv-06593 |

**COMPLAINT**

Plaintiff Crayola Properties, Inc. ("Plaintiff"), a subsidiary of Crayola, LLC (collectively, "Crayola"), hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Crayola's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Crayola substantial injury in the State of Illinois.

## II.  INTRODUCTION

3.     This action has been filed by Crayola to combat e-commerce store operators who trade upon Crayola's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including drawing toys and art kits, using infringing and counterfeit versions of Crayola's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Crayola is forced to file this action to combat Defendants' counterfeiting of the registered Crayola trademarks, as well as to protect unknowing consumers from purchasing potentially dangerous Counterfeit Products over the Internet, many of which are targeted at and intended for use by children. Crayola has been and continues to be irreparably

2

damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.     Plaintiff Crayola Properties, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in Easton, Pennsylvania.

5.     Crayola has inspired artistic creativity in children for more than 100 years.  Since 1903, when the first box of Crayola crayons rolled off the assembly line, Crayola has been engaged in the design, distribution, and sale of high-quality art materials, art kits and creative play toys (collectively, the "Crayola Products").

6.     After Edwin Binney and C. Harold Smith took over Edwin's father's pigment business, they noticed a need for safe, high quality, affordable wax crayons, and the first box of Crayola crayons was created.  Since then, the Crayola brand has continued to grow, developing a diverse portfolio of innovative art materials, art kits and creative play toys that inspire kids to explore their creativity and unleash their originality.

7.     Crayola Products have become enormously popular, driven by Crayola's arduous quality standards and innovative design.  Among the purchasing public, genuine Crayola Products are instantly recognizable as such.  The Crayola brand has come to symbolize high quality, and Crayola Products are renowned for their quality, performance, and reliability.

8.     Crayola incorporates a variety of distinctive marks in its various Crayola Products. Crayola has registered its trademarks with the United States Patent and Trademark Office.  Crayola Products typically include at least one of Crayola's registered trademarks.   Crayola uses its

trademarks in connection with the marketing of its Crayola Products, including the following marks which are collectively referred to as the "CRAYOLA Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 1,105,850 |  | For: Paint in class 002.<br><br>For: Artists' painting paper; crayons; coloring sheets and coloring books in class 016.<br><br>For: Children's play craft kits in class 028. |
| 717,196 |  | For: Crayons and chalk in class 016. |
| 641,294 | CRAYOLA | For: Finger paint in class 002. |
| 644,752 | CRAYOLA | For: Crayons in class 016. |
| 987,896 | CRAYOLA | For: Chalk for drawing and writing purposes in class 016. |
| 1,088,807 | CRAYOLA | For: Toy-namely, craft kits in class 028. |
| 1,089,181 | CRAYOLA | For: Art kits containing clay in class 016. |
| 1,090,330 | CRAYOLA | For: Markers in class 016. |
| 1,146,580 | CRAYOLA | For: Water colors in class 002. |

4

| 1,156,890 | CRAYOLA | For: Paints for artists and children in class 002. |
|---|---|---|
| 1,116,380 | CRAYOLA | For: Art kit containing paint in class 016. |
| 1,160,926 | CRAYOLA | For: Art and craft and stationery adhesives, such as white paste and glue in class 016. |
| 1,173,166 | CRAYOLA | For: Art and craft paints and art and craft brushes sold in the form of kits containing a brush and paint; paper for art and craft painting or coloring in class 016. |
| 1,279,429 | CRAYOLA | For: Paints; colors in class 002.<br><br>For: Chalk; crayons; crayon sharpeners; markers; modeling clay; art kits, art supplies and art materials comprising art brushes, art rubbing boards, art supplies and materials carrying cases, art drawing paper, art guide sheets and instructions, chalkboards, tables constructed to hold easels upright, easels, erasers, pencils, retainer trays for art materials and supplies, sketch pads, stencils, tracing paper, coloring kits, supplies and materials comprising coloring instructions, coloring books, pre-printed drawing sheets, wipe clean coloring surfaces; play books; coloring books; craft kits, craft supplies and craft materials for children and young people comprising art and craft glue, craft project booklets, worksheets and instructions, craft materials and supplies carrying pouches, craft drawing boards, construction paper, pre-printed and plain drawing paper, painting medium, playboards, scissors, tracing paper, wipe-off game boards in class 016.<br><br>For: Hobby kits comprising crayoning and coloring games, game materials retainer trays, game instructions in class 028. |
| 4,361,571 | CRAYOLA | For: Drawing toys in class 028. |

5

| 5,966,044 | SCRIBBLE SCRUBBIE | For: Art activity kits containing washable marker pens in class 016.<br><br>For: Art activity kits containing toy figurines in class 028. |
| 560,758 | | For: Plastic known as organosilicon designed and sold for use as a modeling clay and amusement device by children in class 028. |
| 4,237,806 | SILLY PUTTY | For: Plastic known as organosilicon designed and sold for use as a modeling clay and amusement device by children, namely, toy putty in class 028. |

9.      The above U.S. registrations for the CRAYOLA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CRAYOLA Trademarks constitute *prima facie* evidence of their validity and of Crayola's exclusive right to use the CRAYOLA Trademarks pursuant to 15 U.S.C. § 1057(b). The CRAYOLA Trademarks have been used exclusively and continuously by Crayola for many years and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed CRAYOLA Trademarks are attached hereto as **Exhibit 1.**

10.      The CRAYOLA Trademarks are exclusive to Crayola, and are displayed extensively on or in close connection with Crayola Products and in Crayola's marketing and promotional materials. Crayola Products have become quite popular and have been extensively promoted and advertised at great expense. Crayola Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as the industry leader in art materials, art kits and creative play toys. Because of these and other factors, the Crayola name and the CRAYOLA Trademarks have become famous throughout the United States.

11.    The CRAYOLA Trademarks are distinctive when applied to the Crayola Products and packaging, signifying to the purchaser that the products come from Crayola and are manufactured to Crayola's quality standards.  Whether Crayola manufactures the products itself or contracts with others to do so, Crayola has ensured that products bearing or sold within packaging bearing the CRAYOLA Trademarks are manufactured to the highest quality standards. The CRAYOLA Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As such, the goodwill associated with the CRAYOLA Trademarks is of incalculable and inestimable value to Crayola.

12.    Crayola has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the CRAYOLA Trademarks.  As a result, products bearing the CRAYOLA Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Crayola.  The widespread fame, outstanding reputation, and significant goodwill associated with the Crayola brand have made the CRAYOLA Trademarks invaluable assets of Crayola.

**The Defendants**

13.    Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Crayola.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

14.    On information and belief, Defendants either individually or jointly own and/or operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached

hereto. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Crayola to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Crayola will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

15. The success of the Crayola brand has resulted in its significant counterfeiting. Consequently, Crayola has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Crayola has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

16. Counterfeits pose significant health and safety risks to consumers, especially for toys designed for and marketed to children. *See* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy,

Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 3,** at 17–18 (discussing an investigation by the Government Accountability Office which found a 99 percent failure rate in testing counterfeit adapters for safety, fire, and shock hazards, with some of the adapters posing a risk of lethal electrocution to the user). Counterfeit children's toys, such as the Counterfeit Products, often contain ingredients such as arsenic, mercury, aluminum, cadmium, or lead. Moreover, these products are often manufactured in unsanitary conditions, which further exacerbates the health and safety risks for children, who may ingest toys such as crayons or other art supplies. *See id.* at 18.

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* **Exhibit 3** (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary). Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 3** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 3** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer

shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

19.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Crayola has not licensed or authorized Defendants to use any of its CRAYOLA Trademarks, and none of the Defendants are authorized retailers of genuine Crayola Products.

20.     Many Defendants also deceive unknowing consumers by using the CRAYOLA Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Crayola Products.  Other e-commerce stores operating under Seller Aliases omit using the CRAYOLA Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Crayola Products.

21.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms.  On information and belief, certain Defendants have

anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

24.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

11

25.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Crayola's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Crayola.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

26.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Crayola, have jointly and severally, knowingly and willfully used and continue to use the CRAYOLA Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

27.     Defendants' unauthorized use of the CRAYOLA Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Crayola.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

28.     Crayola hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CRAYOLA Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The CRAYOLA Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from the Crayola Products offered, sold or marketed under the CRAYOLA Trademarks.

30.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CRAYOLA Trademarks without Crayola's permission.

31.     Crayola is the exclusive owner of the CRAYOLA Trademarks.  The United States Registrations for the CRAYOLA Trademarks (Exhibit 1) are in full force and effect.   On information and belief, Defendants have knowledge of Crayola's rights in the CRAYOLA Trademarks, and are willfully infringing and intentionally using counterfeits of the CRAYOLA Trademarks.  Defendants' willful, intentional and unauthorized use of the CRAYOLA Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

32.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33.     Crayola has no adequate remedy at law, and if Defendants' actions are not enjoined, Crayola will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CRAYOLA Trademarks.

34.     The injuries and damages sustained by Crayola have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35.     Crayola hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Crayola or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Crayola.

37.     By using the CRAYOLA Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

38.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.     Crayola has no adequate remedy at law and, if Defendants' actions are not enjoined, Crayola will continue to suffer irreparable harm to its reputation and the goodwill of the Crayola brand.

14

## PRAYER FOR RELIEF

WHEREFORE, Crayola prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CRAYOLA Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Crayola Product or is not authorized by Crayola to be sold in connection with the CRAYOLA Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Crayola Product or any other product produced by Crayola that is not Crayola's or not produced under the authorization, control, or supervision of Crayola and approved by Crayola for sale under the CRAYOLA Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Crayola, or are sponsored by, approved by, or otherwise connected with Crayola;

   d. further infringing the CRAYOLA Trademarks and damaging Crayola's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Crayola, nor authorized by Crayola to be sold or offered for sale, and which bear any of Crayola's trademarks, including the CRAYOLA Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Crayola's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CRAYOLA Trademarks;

3) That Defendants account for and pay to Crayola all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CRAYOLA Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Crayola be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CRAYOLA Trademarks;

5) That Crayola be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 5th day of November 2020.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
ibegert@gbc.law

*Counsel for Plaintiff Crayola Properties, Inc.*